IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

MICHAEL RICHTER,

      Plaintiff,

vs.

RONALD J. VAN AMBERG; JOEL F.
ROTH; MICHAEL P. GROSS;  CARL
B. ROGERS; RAYMOND Z. ORTIZ;
ROTH; VAN AMBERG, GROSS,
ROGERS & ORTIZ, a New Mexico
General Partnership,

      Defendants.

No. CIV 97-0751 PK/DJS

---

MEMORANDUM OPINION AND ORDER

---

THIS MATTER came on for consideration of Defendants' oral motion to dismiss, really a motion for judgment as a matter of law, at the close of Plaintiff's case in chief.  The court, having heard the evidence and considered the applicable law, found that the motion was well taken and should be granted.  This memorandum opinion and order supplements the record.

Background

A.    The Claims

Plaintiff Richter's First Amended Complaint contains four claims against

Defendant Ronald Van Amberg and the law firm he was associated with,
Defendant Roth, Van Amberg, Gross, Rogers & Ortiz. The claims are for
recovery of compensatory and punitive damages and include: (I) legal
malpractice, (II) breach of fiduciary duty, (III) deceit or collusion based upon a
violation of N.M. Stat. Ann. § 36-2-17, and (IV) aiding and abetting a breach of
fiduciary duty. The claims arise out of Defendant Van Amberg's representation
of a two-person partnership (Santa Fe Partners II) consisting of Plaintiff Richter
and Stephen Gibbens.

B.      Plaintiff's View

        Briefly, Santa Fe Partners II purchased land for development and later
resold part of it. Mr. Gibbens was the managing partner. Plaintiff Richter
believes that Mr. Van Amberg's representation of Mr. Gibbens was adverse to
Plaintiff Richter's interests, and improper based upon (1) Mr. Van Amberg's
previous representation of Plaintiff Richter in 1987, and (2) Mr. Van Amberg's
failure to disclose that Mr. Gibbens had expressed his intention to terminate the
partnership without compensating Plaintiff Richter.

        Under the partnership agreement, Plaintiff Richter anticipated receiving
twenty percent of the profits from Santa Fe Partners II after Mr. Gibbens'
substantial capital contribution had been repaid. Plaintiff Richter maintains that
Mr. Van Amberg secretly facilitated a land sale, the Monte Alto Homes
transaction, which allowed Mr. Gibbens to deprive him of his share of the profits.

Mr. Gibbens initially sought to close the Monte Alto Homes transaction without notice to Plaintiff Richter. The broker declined to withhold notice unless indemnified by Mr. Gibbens. At the request of Plaintiff Richter's counsel, Mr. Van Amberg participated in seeking an accommodation between Mr. Gibbens and Plaintiff Richter that would allow the transaction to close. That accommodation provided that Plaintiff Richter would receive notice of the proceeds collected. It also provided that Mr. Gibbens would take responsibility for a note (the Amrep note) that Plaintiff Richter had signed on behalf of the partnership. But the accommodation did not require Mr. Gibbens to distribute profits.

According to Plaintiff Richter, had he known the true intentions of Mr. Gibbens, he would not have agreed to allow the Monte Alto Homes transaction to proceed. Subsequently, Plaintiff Richter learned of an attempt by Mr. Gibbens to refinance partnership property and requested Mr. Van Amberg to provide documentation from the abstract company. Mr. Van Amberg indicated that he had not seen and did not have access to the file.

C.    Defendants' View

The Defendants contend that Mr. Van Amberg was approached by Mr. Gibbens for personal representation, but that Mr. Van Amberg declined and represented the partnership. They point out that Mr. Gibbens was the managing

partner and had full authority under the partnership agreement, without the necessity of consent by Plaintiff Richter, to sell, encumber, and otherwise manage partnership property. Defendants contend that Mr. Van Amberg's duty of disclosure was to the partnership and not to the individual partners.

In previous state court litigation, Mr. Gibbens sued Plaintiff Richter to dissolve the partnership and Plaintiff Richter counterclaimed. That matter was resolved by a settlement between the parties wherein Plaintiff Richter received $110,000. Defendants contend that at the time of settlement, Plaintiff Richter was fully aware of the matters that he now says should have been disclosed by Mr. Van Amberg. Defendants further contend that the Monte Alto Homes transaction benefitted all involved.

Discussion

A.      <u>JMOL and Applicable Law</u>

Judgment as a matter of law is appropriate "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party . . . ." Fed. R. Civ. P. 50(a)(1). Rule 50 allows a "trial court to remove cases or issues from the jury's consideration when the facts are sufficiently clear that the law requires a

particular result." Weisgram v. Marley Co., 120 S. Ct. 1011, 1017 (2000) (internal citation and quotation omitted). In deciding whether the evidence points but one way and is not capable of any reasonable inference to support the non-movant's position, the evidence must be viewed in the light most favorable to the non-movant. See Pack v. Kmart Corp., 166 F.3d 1300, 1303-04 (10th Cir. 1999).

In this diversity case, New Mexico law must be ascertained and applied. Absent a statute or decision by the New Mexico Supreme Court, the task is one of predicting how that court would rule. See Wood v. Eli Lilly & Co., 38 F.3d 510, 512 (10th Cir. 1994). All resources available, including decisions of New Mexico, other states, and federal decisions, and the general weight and trend of authority may be considered. See Farmers Alliance Mut. Ins. Co. v. Bakke, 619 F.2d 885, 888 (10th Cir. 1980).

B.    Count III–Deceit and Collusion Claim

Count III was eliminated from the lawsuit at the beginning of trial. N.M. Stat. Ann. § 36-2-17 (Michie 1991 Repl. Pamp.) provides:

> If an attorney is guilty of deceit or collusion or consents thereto with intent to deceive the court, judge or party, he shall forfeit to the injured party, treble damages to be recovered in a civil action, and may, if in the opinion of the board of bar examiners such conduct warrants it, be disbarred.

Essentially, Plaintiff Richter contends that Mr. Van Amberg deceived him about

representing Mr. Gibbens and about Mr. Gibbens' adverse position. He also

contends that Mr. Van Amberg colluded with Mr. Gibbens to withhold material

information from him.

1.     The Statute Does Not Apply Outside the Context of Judicial Proceedings

The terms "the court, judge or party" suggest that the statute applies only

in the context of judicial proceedings. Indeed, reported application of the statute

has been in that context. See Bennett v. Kisluk, 814 P.2d 89 (N.M. 1991);

Gutierrez v. Sundancer Indian Jewelry, Inc., 868 P.2d 1266 (N.M. Ct. App.

1993).

There are a number of other jurisdictions that have adopted similar statutes

with nearly identical language. See Cal. Bus. & Prof. Code § 6128(a) (West

2000); Iowa Code Ann. § 602.10113 (West 2000); Kan. Stat. Ann. § 7-106 (1988)

(repealed); Minn. Stat. § 481.07 (1999); Mont. Code Ann. § 37-61-406 (1999);

Neb. Rev. Stat. § 7-106 (1999); N.Y. Jud. Law § 487 (McKinney 1999); Okla.

Stat. tit. 21 § 575 (1999). Among these, courts in New York, Kansas, and

Nebraska have explicitly held that an action for deceit and collusion does not lie

outside the context of pending judicial proceedings. See Nardella v. Braff, 621

F. Supp. 1170 (S.D.N.Y. 1985); Mohr v. State Bank of Stanley, 770 P.2d 466,

476 (Kan. 1989); <u>Abel v. Conover</u>, 104 N.W.2d 684, 693 (Neb. 1960); <u>Bank of India v. Weg & Myers, P.C.</u>, 691 N.Y.S.2d 439, 446 (N.Y. App. Div. 1999); <u>Singer v. Whitman & Ransom</u>, 442 N.Y.S.2d 26, 27 (N.Y. App. Div. 1981).  The New York statute appears to be the paradigm of such statutes with application only to judicial proceedings.  <u>See</u> 1 Ronald E. Mallen & Jeffrey M. Smith, <u>Legal Malpractice</u> § 9.2 at 616-17 (4th ed. 1996 & Supp. 1998).  In California, Oklahoma, Montana, and Iowa, the deceit and collusion statutes have never been invoked regarding conduct in a non-judicial proceeding.  Only Minnesota has permitted the application of the deceit and collusion statute in the context of a non-judicial proceeding.  <u>See</u> <u>Baker v. Ploetz</u>, 597 N.W.2d 347 (Minn. Ct. App. 1999).  In my view, New Mexico would give effect to the limitation contained in the statute's language and follow the majority view.  Although Plaintiff Richter suggests that Mr. Van Amberg's misconduct occurred in a judicial proceeding, specifically in the Santa Fe Partners II state court proceedings, this case was never pled that way.

C.    <u>Counts I and II–Legal Malpractice and Breach of Fiduciary Duty</u>

1.    <u>Legal Malpractice-Elements</u>

Legal malpractice based upon negligence requires proof of the following

elements:  (1) the employment of the defendant attorney, (2) the defendant attorney's neglect of a reasonable duty, and (3) the negligence resulted in and was the proximate cause of loss to the plaintiff.  See Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor, 848 P.2d 1086, 1089-90 (N.M. Ct. App. 1993).  To show the neglect of a reasonable duty, "a plaintiff must show, usually through expert testimony, that his or her attorney failed to use the skill, prudence and diligence of an attorney of ordinary skill and capacity."  Id. at 1090.  Thus, an expert will testify as to the standard of care (reasonable duty) and how the attorney neglected it.

2.    Breach of Fiduciary Duty-Elements

The breach of fiduciary duty claim is also one for legal malpractice, but there is a distinction.  See 2 Mallen & Smith, Legal Malpractice § 14.1.5 (4th ed. 1998 Supp.) ("The [breach of fiduciary obligations] tort is a wrong distinct from professional negligence but is still legal malpractice.)"  "Legal malpractice based on negligence concerns violations of the standard of care; whereas legal malpractice based upon breach of duty concerns violations of a standard of conduct."  Kilpatrick v. Wiley, Rein & Fielding, 909 P.2d 1283, 1290 (Utah 1996).  The standard of conduct pertains to the lawyer's two fiduciary obligations–undivided loyalty and confidentiality.  2 Mallen & Smith, Legal

Malpractice § 14.1.5 (1998 Supp.).  It is possible to have professional negligence

without a breach of fiduciary duty, and vice-versa.

The claim for breach of fiduciary duty "corresponds to a cause of action

for negligence, substituting the fiduciary duty for the standard of care."  Id.

Thus, the elements to be proven include (1) the existence of a fiduciary

relationship between the plaintiff and the defendant attorney, (2) breach of that

fiduciary relationship by the defendant attorney, and (3) the breach of fiduciary

relationship as the proximate cause of loss to the plaintiff.  See Kilpatrick, 909

P.2d at 1290; Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc., 665 A.2d

1038, 1046 (Md. Ct. App. 1995).

3.    Role of the Rules of Professional Conduct

Both parties rely upon the Rules of Professional Conduct.  Those rules

provide some guidance in determining the professional obligations of a lawyer,

but they do not furnish independent grounds for a legal malpractice claim.  See

Preamble, R. Prof. Conduct, N.M.R. Ann. (2000); Sanders, Bruin, Coll &

Worley, P.A. v. McKay Oil Corp., 943 P.2d 104, 107 (N.M. 1997); Garcia v.

Rodey, Dickason, Sloan, Akin & Robb, P.A., 750 P.2d 118, 123 (N.M. 1988).  At

the same time, a legal malpractice claim is not barred simply because "its

substance enters the realm of conduct covered under the Rules of Professional

Conduct." <u>See</u> <u>Sanders</u>, 943 P.2d at 107.

4.    <u>Plaintiff Richter's Previous Employment of Mr. Van Amberg</u>

Plaintiff Richter has not established his employment of Mr. Van Amberg as to the transactions that form the basis of this lawsuit.  Instead, he relies upon a previous representation occurring primarily in 1987, involving different real estate and a different partnership.  No evidence suggests Mr. Van Amberg's representation of Mr. Gibbens, the managing partner of Santa Fe Partners II, involved the same or a substantially related matter to Mr. Van Amberg's previous representation of Plaintiff Richter.  <u>See</u> R. Prof. Conduct 16-109(A).  Moreover, the previous representation had been terminated and Plaintiff Richter was a former client; no reasonable trier of fact could find otherwise.  Merely because both representations involved Santa Fe real estate does not establish a substantial relationship.  Nor does any evidence suggest that Mr. Van Amberg used any information relating to his previous representation to the disadvantage of Plaintiff Richter.  <u>See</u> <u>id.</u>  Plaintiff Richter's consent to Mr. Van Amberg's subsequent representation of Mr. Gibbens was not required.

5.    <u>Mr. Gibbens' Employment of Mr. Van Amberg</u>

Plaintiff Richter also relies upon employment of Mr. Van Amberg by Mr. Gibbens, on behalf of the partnership.  The evidence indicates that in 1993 Mr.

Van Amberg was approached for representation by Mr. Gibbens in his personal capacity.  Mr. Van Amberg later declined, but represented the partnership (Santa Fe Partners II).  Mr. Gibbens and Plaintiff Richter then obtained separate counsel concerning their disputes.

In the course of Mr. Gibbens' seeking personal representation by Mr. Van Amberg, Mr. Van Amberg received a letter from him indicating that (1) Mr. Gibbens felt that he had been deceived by Plaintiff Richter taking an undisclosed real estate commission, and (2) Mr. Gibbens wanted to dissolve Santa Fe Partners I and II and be relieved of paying Plaintiff Richter any percentage of profits because he felt that Plaintiff Richter had not performed over several years.

a.      Mr. Van Amberg Represented the Partnership via the Managing Partner

No evidence suggests that Mr. Van Amberg ever accepted representation of Mr. Gibbens in his personal capacity.  Rather, based upon the partnership documents (signed by Plaintiff Richter), Mr. Van Amberg represented the designated managing partner.  Essentially, taking an aggregate view of partnership on this issue, Plaintiff Richter's expert testified that Mr. Van Amberg was required to disclose the above information to Plaintiff  Richter or not represent the partnership.  As the expert acknowledged, Mr. Van Amberg could not disclose the information gained from Mr. Gibbens (when he sought

representation in his personal capacity) absent Mr. Gibbens' consent. That is because the lawyer-client privilege applies to communications[1] by a person who consults a lawyer with a view to obtaining professional legal services. See In re Lichtenberg, 871 P.2d 981, 982 (N.M. 1994); R. Prof. Conduct 11-503(A)(1); 16-106(A). The expert's remaining opinion on the standard of care and standard of conduct required in this case, however, was not informed by any applicable legal authority or the specific terms of this partnership agreement. An expert cannot create a duty as to a standard of care or conduct based upon an assumed obligation in the law. See 4 Mallen & Smith, Legal Malpractice § 32.17 at 215 (4th ed. 1996).

The rights and duties of partners in relationship to a partnership may be determined by an agreement between them. Although New Mexico law provides that all partners have equal rights in the management and conduct of the partnership business, the partnership agreement may give a managing partner specific powers and duties to act on behalf of the partnership. See N.M. Stat. Ann. § 54-1-18(E) (1996 Repl. Pamp.) (repealed); Covalt v. High, 675 P.2d 999,

---

[1] No one suggests that the Mr. Gibbens' information was within the crime-fraud exception to the lawyer client privilege, or that disclosure was required to prevent the potential client from preventing a criminal act. See R. Prof. Conduct 11-503(D); 16-106(B) & (C).

1002 (N.M. Ct. App. 1983); see also II Alan R. Bromberg & Larry E. Ribstein,

Bromberg & Ribstein on Partnership § 6.03(b) (1999) ("partners may concentrate

management power . . . among themselves in one or more managing partners").

Here the primary management of the partnership was entrusted to the managing

partner, Mr. Gibbens. By virtue of his capital contribution, Mr. Gibbens under

the partnership agreement had the authority to convey partnership real property

and incur indebtedness on behalf of the partnership without Plaintiff Richter's

consent. Profits were to be distributed at the discretion of the managing partner.

b.     Mr. Van Amberg Did Not Represent Plaintiff Richter

As the partnership lawyer, Mr. Van Amberg's responsibility was to the

entity, specifically the managing partner. See R. Prof. Conduct 16-113(A) ("A

lawyer employed or retained by an organization represents the organization

through its duly authorized constituents."). Accord Restatement of the Law

Governing Lawyers § 155 (Tentative Draft No. 8 Mar. 21, 1997).[2] In Rice v.

Strunk, 670 N.E.2d 1280 (Ind. 1996), the court discussed the parameters of the

attorney-client relationship in the context of a general partnership. Rice involved

---

[2]The parties agreed that the jury would be instructed based upon the text of
§ 155, which plainly reflects an entity view of representation. See Defendant'
Proposed Jury Instructions (Contested) filed July 8, 1999, Prop. Instr. No. 7-8
(doc. 72) & Defendants' List of Jury Instructions Indicating Plaintiff's Position
Thereon filed March 15, 2000 (doc. 127) (indicating Plaintiff no longer contests
Prop. Instr. No. 7-8).

the failure of a lawyer to disclose information received from a managing general partner to another general partner. The managing general partner told the lawyer not to disclose for fear that the general partner would not agree to a real estate closing involving refinancing.

> In summary, we conclude that an attorney for a general partnership subject to the provisions of the UPA as a matter of partnership law has an attorney-client relationship with each of both the partnership and each individual partner. However, to the extent that the partners agree that the partnership will be managed in a form other than by all the partners acting in aggregate, the attorney-client relationship will run to the partnership as an entity acting through its duly authorized management.

Id. at 1288-89. Here, the partners agreed that Mr. Gibbens would manage the partnership; thus, the attorney-client relationship ran only to the partnership acting through its duly authorized management, Mr. Gibbens the managing partner.

In analogous circumstances, New Mexico law has supported treating the organization as a separate entity, distinct from its constituents. In Marchman v. NCNB Texas Nat'l Bank, 898 P.2d 709, 716 (N.M. 1995), the court stated: "A corporation and a shareholder–even a sole shareholder–are separate entities, and a shareholder of a corporation does not have an individual right of action against a third person for damages that result because of an injury to the corporation."

In Delta Automatic Sys., Inc. v. Bingham, 974 P.2d 1174 (N.M. Ct. App. 1998), the court considered claims by sole shareholders that the corporate attorney owed them a special duty because he represented them in matters apart from the corporation. They also argued that they were the intended beneficiaries of the corporate representation based upon Leyba v. Whitley, 907 P.2d 172 (N.M. 1995). Leyba involved misapplication of wrongful death proceeds and held "that attorneys have a duty to exercise reasonable care to ensure that the statutory beneficiaries [though non-clients] actually receive the proceeds of any wrongful death claim." Id. at 182.

As to the first argument, the Delta court said:

> The Quintanas contend that Defendants owed them a special duty because Bingham drew up their wills and represented them in business matters apart from his representation of Delta. It is true that as their personal lawyers, Defendants owed the Quintanas various duties. But the Quintanas allege no harm suffered by them as a result of a breach of those duties. In representing Delta, Defendants did not owe the Quintanas, as shareholders, any special duty above and beyond their duties to the corporation. This is so even though the Quintanas were the sole shareholders of Delta and Defendants knew that the Quintanas' livelihood depended on Delta's success. Our Supreme Court rejected similar claims in Marchman.

Delta, 974 P.2d at 1178. The court also rejected the idea that the sole shareholders were intended beneficiaries of the corporate representation. Leyba was limited to the special situation of personal representatives appointed under

the Wrongful Death Act who must comply with the Act; it does not apply to trustees or corporate management invested with discretion in performing various tasks. <u>Delta</u>, 974 P.2d at 1179.

c.      <u>Mr. Van Amberg Did Not Impliedly Represent Plaintiff Richter</u>

As noted, both Plaintiff Richter and Mr. Gibbens retained separate counsel to handle their deteriorating relationship vis-a-vis the partnership. This substantially undercuts the notion that Mr. Van Amberg somehow represented either of them individually. Mere representation of a partnership does not, in and of itself, constitute representation of the individual partners. <u>See</u> <u>Johnson v. Superior Ct.</u>, 38 Cal. App. 4th 463, 477 (Cal. Ct. App. 1995).

> Without any attempt at being exhaustive, we can identify some factors which might support, or undercut, implication of an attorney-client relationship with an individual partner in any particular case. The type and size of the partnership obviously have a bearing, as already noted. So do the nature and scope of the attorney's engagement by the partnership. The kind and extent of contacts, if any, between the attorney and the individual partner might be important factors. The same is true as to the attorney's access to information (e.g., partnership financial information) relating to the individual partner's interests.

<u>Responsible Citizens v. Superior Ct.</u>, 16 Cal. App. 4th 1717, 1732 (Cal. Ct. App. 1993); <u>see also</u> <u>Rice</u>, 670 N.E.2d at 1288.

Although this was a two-person partnership, Mr. Gibbens dealt with Mr. Van Amberg as to partnership matters. Mr. Van Amberg testified, as did Mr.

-16-

Gibbens, that he specifically declined to represent Mr. Gibbens in his individual

capacity and only represented the partnership.  Mr. Van Amberg's relationship

with Plaintiff Richter in the previous representation had long since ended.  No

evidence suggests that Mr. Van Amberg ever assumed a duty to represent

Plaintiff Richter regarding Santa Fe Partners II.

Although Mr. Van Amberg participated in arranging an accommodation

between Mr. Gibbens and Plaintiff Richter that allowed the Monte Alto Homes

transaction to close, that was done at the request of Plaintiff Richter's counsel,

who was fully representing Plaintiff Richter's interests.  Mr. Van Amberg cannot

be faulted for participating when his participation was secured by Plaintiff

Richter.  To the extent that Plaintiff Richter, already represented by able counsel,

contends that Mr. Van Amberg also represented him, such a contention is

completely unsupported by the facts and unreasonable as a matter of law.

Both Mr. Van Amberg and Mr. Gibbens testified that Mr. Van Amberg,

consistent with his role as the partnership attorney, urged Mr. Gibbens to disclose

certain partnership matters to Plaintiff Richter.  No evidence suggests that Mr.

Van Amberg had access to partnership financial information specifically related

to Plaintiff Richter's interests; Mr. Van Amberg did have access to some

information pertaining to Mr. Gibbens, but there is no evidence that such

information was utilized.

6.    No Proximate Cause of Damages

The foregoing authorities suggest that Mr. Van Amberg's representation of the partnership through the managing partner did not require him to disclose the information in question. Regardless, Plaintiff Richter produced no evidence suggesting that Mr. Van Amberg's acts or omissions led to the damages claimed. It must be remembered that the economic interest Plaintiff Richter is trying to vindicate is a twenty percent interest in partnership profits, after Mr. Gibbens had been repaid all capital contributions. There were serious differences between Plaintiff Richter and Mr. Gibbens; each contended that the other breached fiduciary obligations attendant to partners. The traditional remedy is an accounting sought in state court. See N.M. Stat. Ann. §§ 54-1-21, 54-1-22 (1996 Repl. Pamp.) (repealed); II Bromberg & Ribstein on Partnership, § 6.08(b) & (d) (discussing an accounting); GCM, Inc. v. Kentucky Central Life Ins. Co., 947 P.2d 143, 149 (N.M. 1997).

Plaintiff Richter indicated that he was satisfied with the Monte Alto Homes transaction insofar as it benefitted the partnership. Given the partnership agreement, Mr. Gibbens' capital contribution, and the power vested in Mr. Gibbens as managing partner, no evidence suggests that Plaintiff Richter had

legal rights with respect to the Monte Alto Homes transaction[3] that would have been vindicated, but were not, due to the actions of Mr. Van Amberg. This is borne out by the settlement agreement in an underlying state court suit; Plaintiff Richter conceded all items of Mr. Van Amberg's alleged non-disclosure were known prior to settlement. Plaintiff Richter's testimony that he might have attempted to involve a receiver in the Monte Alto Homes transaction had he known of the non-disclosure is pure speculation and conjecture. Although given the opportunity, Plaintiff Richter presented no evidence suggesting that he could have obtained more in settlement of the underlying state court suit but for the alleged non-disclosure by Mr. Van Amberg.[4] <u>See Rodriguez v. Horton</u>, 622 P.2d 261, 264 (N.M. Ct. App. 1980) (plaintiff may establish malpractice when he can prove settlement of the underlying claim was inadequate due to lawyer's handling of the case). There was a total lack of proof in this case as to how Plaintiff Richter would have benefitted from knowledge of the alleged non-disclosure. <u>See Kilpatrick</u>, 909 P.2d at 1291.

---

[3]Including Mr. Gibbens' slow payoff of the Amrep note and his discounting of a note receivable.

[4]The court rejects the notion that settlement of the underlying lawsuit automatically bars a malpractice action. <u>See Rodriguez v. Horton</u>, 622 P.2d 261, 264 (N.M. Ct. App. 1980).

D.    <u>Count IV–Aiding and Abetting Breach of Fiduciary Duty</u>

1.    <u>Elements</u>

To establish a claim of aiding and abetting a breach of fiduciary duty, a plaintiff must prove the following elements: (1) a fiduciary of the plaintiff, here Plaintiff Richter's partner, Mr. Gibbens, breached a duty owed to the plaintiff, (2) the defendant knew of such a duty, (3) the defendant intentionally provided substantial assistance or encouragement to the fiduciary to commit an act which the defendant knew to be a breach of duty, (4) damages to the plaintiff were proximately caused thereby.  <u>See</u> <u>GCM, Inc.</u>, 947 P.2d at 148, 150.  An individual claim for aiding and abetting the breach of fiduciary duty, as opposed to a partnership claim, requires the individual plaintiff to show direct injury.  <u>See</u> <u>id.</u> at 150.  Here, Plaintiff Richter contends that Mr. Van Amberg aided and abetted Mr. Gibbens' in depriving Plaintiff Richter of his share of partnership profits.  According to Plaintiff Richter, this was accomplished through Mr. Van Amberg's non-disclosure of Mr. Gibbens' intentions toward Plaintiff Richter.

2.    <u>No Evidence of Knowledge, Encouragement or Proximate Cause of Damages</u>

The parties (Mr. Gibbens and Plaintiff Richter) had colorable claims against one another for breach of fiduciary duty; assuming that Mr. Gibbens

breached his fiduciary duties toward Plaintiff Richter in these circumstances, no evidence suggests that Mr. Van Amberg knew of the particular duty, let alone encouraged Mr. Gibbens to breach such fiduciary duties. After hearing the testimony in this case, it is apparent that both Plaintiff Richter and Mr. Gibbens have strong personalities; it is highly unlikely that Mr. Van Amberg could have predicted what either would do regarding their ongoing partnership disputes. Wisely, Mr. Van Amberg referred Mr. Gibbens to outside counsel in a reasonably prompt manner, and encouraged him to make some disclosure. Again, no evidence suggests that Mr. Van Amberg's non-disclosure was the proximate cause of damages to Plaintiff Richter.

It is not necessary to address the additional grounds relied upon by the Defendants in their motion for judgment as a matter of law.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Defendants' oral motion to dismiss at the close of the Plaintiff's case in chief is construed as a motion for judgment as a matter of law and is granted.

Judgment will be entered accordingly.

DATED this 12th day of April 2000, at Santa Fe, New Mexico.

_Paul Kelly Jr._
United States Circuit Judge
Sitting by Designation

Counsel:

William Panagakos and Fred C. Smith, Panagakos & Wirth, P.C., Santa Fe, New Mexico, for Plaintiff.

John A. Klecan, Robert Tabor Booms, Norman L. Gagne, and Monica R. Garcia, Butt, Thornton & Baehr, P.C., Albuquerque, New Mexico for Defendants.